UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

GOLDEN GATE NATIONAL SENIOR ) 
CARE, LLC d/b/a GOLDEN )
LIVING, et al., )
          )   Civil Case No. 14-cv-327-JMH
  Plaintiffs, )
          )
v. )
          )   **MEMORANDUM OPINION & ORDER**
MELVIN ADDINGTON, as executor )
of the Estate of Mary Helen )
Addington, )
          )
  Defendant.

\*\*\*

This matter is before the Court on several motions: Defendant Melvin Addington's Motion to Dismiss [DE 6; Response at DE 7] and his Motion for Extension of Time to File Response to Plaintiffs' Motion to Compel Arbitration [DE 9]. Plaintiffs have filed a Response [DE 10], stating their objection to the Motion for Extension of Time. Finally, the Court will consider Plaintiffs' Motion to Compel Arbitration [DE 8]. These motions are ripe for consideration.

As an initial matter, Defendant seeks dismissal of this matter for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to join a necessary party pursuant to Fed. R. Civ. P. 12(b)(7). Defendant also asks this Court to abstain from exercising any jurisdiction that it might have under the *Colorado River* abstention doctrine, which permits

a federal court to dismiss a cause pending before it in favor of a parallel state court action in certain circumstances. Finally, Defendant asks this Court to dismiss Plaintiffs' claim pursuant to 12(b)(6) for failure to state a claim, on the grounds that the subject ADR Agreement is invalid and unenforceable. By their Motion, Defendant asks this Court to enforce the parties' ADR Agreement and compel the arbitration of Defendant's claims against them. They seek, as well, to have this Court enjoin Defendant's prosecution of those claims against them in a pending state court proceeding. For the reasons set forth below, Defendant's Motions will be denied, and Plaintiffs' Motion shall be granted.

## I.

Mary Helen Addington was admitted to Golden Living Center-Stanford ("GLC-Stanford"), a nursing home operated by GGNSC Stanford, LLC, in Stanford, Kentucky, on or about September 4, 2010, where she resided until the date of her death, November 25, 2013. Prior to Ms. Addington's admission, Defendant was named her attorney-in-fact in a Power of Attorney document, executed on October 18, 1999, which vested him with authority to:

> [M]ake contracts, lease, sell, or convey any
> real or personal property that I may now or
> hereafter own, to receive and receipt for
> any money for which may now or hereafter be
> due to me, to retain and release all liens

2

on real or personal property, to draw, make, and sign any and all checks, contracts, or agreements, to invest or reinvest my money for me; to institute or defend suits concerning my property or rights, to take charge of my person in case of sickness or disability of any kind, and to remove and place me in such institutions or places as he may deem best for my personal care, comfort, benefit, and safety; and for said purposes to use and disburse any or all said bank deposit monies or other personal property that I own; and generally to do and perform for me in my name all that I might do if present . . . .

[DE 1-3 at 1, Page ID#: 52.]

As part of Ms. Addington's admissions process at GLC-Stanford and in his capacity as attorney-in-fact for Ms. Addington, Defendant signed an "Alternative Dispute Resolution Agreement." The Agreement requires the arbitration of:

[a]ny and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

3

[DE 1-2 at 3, Page ID#: 49.] The Agreement further states that
it is binding upon Ms. Addington's Estate and Plaintiffs and
their successors and assigns. [DE 1-2 at 1, Page ID#: 47.] The
Agreement specifically provides that it shall be governed by the
Federal Arbitration Act, 9 U.S.C. §§ 1-16. [*Id.*]

On July 9, 2014, Defendant filed suit against Plaintiffs in
Lincoln Circuit Court, Lincoln County, Kentucky, Division II,
Civil Action File No. 14-CI-00228 (the "State Court Action"),
asserting claims against Golden Gate National Senior Care, LLC;
GGNSC Stanford: GNSC Administrative Services, LLC; GGNSC
Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings
II, LLC; Golden Gate Ancillary, LLC; GGNSC Clinical Services,
LLC; GPH Stanford, LLC; Timothy Peek, in his capacity as
Administrator of Golden Living Center-Stanford; Jennifer Thomas,
in her capacity as Administrator of Golden Living Center-
Stanford; Dawn L. Lincoln, in her capacity as Administrator of
Golden Living Center-Stanford; William Ralph Watson II, in his
capacity as Administrator of Golden Living Center-Stanford;
Timothy F. Travis, Jr., in his capacity as Administrator of
Golden Living Center- Stanford; Kevin C. McCowan, in his
capacity as Administrator of Golden Living Center- Stanford; and
John Does 1 through 5 for negligence, medical negligence,
corporate negligence, violations of long term care residents'

rights, wrongful death and punitive damages arising out of her stay at GLC–Stanford.

Some but not all of the defendants in the Lincoln County suit, Golden Gate National Senior Care, LLC; GGNSC Stanford; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; Golden Gate Ancillary, LLC; GPH Stanford, LLC; and GGNSC Clinical Services, LLC, filed suit in this Court asking that this Court enforce the parties' Agreement, compel Defendant to arbitrate his claims, and enjoin Defendant from proceeding against them in the Lincoln County suit. Notably, the individuals who serve as administrators at GLC–Stanford and who are named as defendants in the Lincoln County lawsuit are not plaintiffs in this matter. Plaintiffs claim that the parties' Agreement precludes the assertion of these claims in a civil action and, instead, requires that they be resolved in arbitration under the Agreement and the FAA.

To date, no substantive rulings relating to the enforceability of the Agreement have been made in the State Court Action, nor are any motions currently pending in the State Court Action relating to enforceability of the Agreement. Thus, the State Court Action has not significantly progressed in considering the enforceability of the Agreement or, indeed, with any aspect of the Action.

## II.

This issues presented in Defendant's Motion to Dismiss are familiar to the undersigned, *see Preferred Care, Inc. v. Belcher*, 5:14-cv-107, Memorandum Opinion and Order, DE 9 (E.D.Ky. March 31, 2015), and to others in this district. *See Richmond Health Facilities – Kenwood, L.P., et al. v. Nichols*, 5:14-cv-00141-DCR, 2014 WL 4063823 (E.D.Ky. Aug. 13, 2014); *GGNSC Vanceburg, LLC, d/b/a Golden Living Center-Vanceburg et al. v. Hanley*, Civil Action No. 0:13-106-HRW, 2014 WL 1333204 (E.D.Ky. Mar. 28, 2014); *GGNSC Vanceburg, LLC et al. v. Taulbee*, Civil Action No. 5:13-cv-71-KSF, 2013 WL 4041174 (E.D.Ky. Dec. 19, 2013); *GGNSC Frankfort, LLC v. Hunter*, 3:11-CV-000333-WOB Report and Recommendation [DE 16] (E.D. Ky. October 18, 2011). Having considered the arguments presented by the parties and the facts in this matter, this matter is not so different, and Defendant's Motion to Dismiss shall be denied.

### A.

As an initial matter and in the face of Defendant's Motion to Dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and (7), the Court concludes that it has jurisdiction to consider this matter. Defendant argues that there is no jurisdiction because Plaintiffs have failed to join a necessary party under Rule 19 and, once the citizenship of that necessary party is taken into account, there is a lack of subject-matter

6

jurisdiction under 28 U.S.C. § 1332 because (1) the parties will not be of diverse citizenship and (2) the Federal Arbitration Act will not, alone, create a federal question which would confer jurisdiction under 28 U.S.C. § 1331 in this matter upon this Court.[1]  As explained below, the Court disagrees with this analysis.

At issue in a Rule 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case. In this context, the trial court may proceed as it never could under 12(b)(6)—no presumptive truthfulness attaches to either party's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  If lack of subject-matter jurisdiction is raised in a motion to dismiss, the plaintiff "has the burden of proving jurisdiction in order to survive the motion." *Mich.*

---

[1]  Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4. That is, the FAA "'bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis' [for access to a federal forum] over the parties' dispute." *Vaden v. Discover Bank,* 556 U.S. 49, 59 (2009) (quoting *Hall Street Assoc., LLC v. Mattel, Inc.,* 552 U.S. 576, 581–82 (2008) (internal quotation marks omitted)); *see also Moses. H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1 (1983). Section 4 of the FAA "neither expand[s] nor contract[s] federal subject matter jurisdiction." *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 747 n. 7 (8th Cir. 1986). Thus, a petitioner proceeding under § 4 must assert an independent source of subject matter jurisdiction. Here, the plaintiffs assert only that the Court has diversity jurisdiction pursuant to 18 U.S.C. § 1332.

*S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n,* 287
F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland
Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)); *RMI
Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134
(6th Cir. 1996)(citations omitted).

28 U.S.C. § 1332 provides that "district courts shall have
original jurisdiction of all civil actions where the matter in
controversy exceeds the sum or value of $75,000, exclusive of
interest and costs, and is between ... citizens of different
States," and Plaintiff contends that this Court has jurisdiction
based on the diversity of the parties.  In the instant action,
there is no dispute that the amount in controversy exceeds the
sum or value of $75,000, exclusive of interest and costs.
Further, there is no dispute that Defendant is a resident of
Kentucky and that each of the named Plaintiffs in this action is
a citizen of another state.

Defendant states that, upon information and belief, the
individuals, all of whom serve as nursing home administrators
and who Defendant has sued along with the plaintiffs in this
case in his Lincoln County lawsuit but who are not parties in
the present matter, are citizens of Kentucky.  Plaintiffs do not
deny this.  Thus, Defendant claims that complete diversity of
citizenship among the parties cannot be maintained because,
while the administrators are not named as plaintiffs in this

8

action, they are indispensable parties under Fed. R. Civ. P. 19
and their joinder would destroy the complete diversity among
parties required by 28 U.S.C. 1332(a)(1).

The existence of non-diverse parties in the related state
court action does not, on its own, destroy diversity:

> Rule 19 deals with what were historically
> known as "necessary" and "indispensable"
> parties. The terms "necessary" and
> "indispensable" are terms of art in
> jurisprudence concerning Rule 19, and
> "necessary" refers to a party who should be
> joined if feasible, while "indispensable"
> refers to a party whose participation is so
> important to the resolution of the case
> that, if the joinder of the party is not
> feasible, the suit must be dismissed. If a
> necessary party cannot be joined without
> divesting the court of subject-matter
> jurisdiction, the Rule provides additional
> criteria for determining whether that party
> is indispensable, but if the court finds
> that the party is anything less than
> indispensable, the case proceeds without
> that party, and if, on the other hand, the
> court finds that the litigation cannot
> proceed in the party's absence, the court
> must dismiss the case.

*GGNSC Vanceburg, LLC, v. Hanley*, Civil Action No. 13-106-HRW,
2014 WL 1333204, *3 (E.D. Ky. Mar. 28, 2014).

Accordingly, the Court first considers whether these
administrators are even necessary parties. They are necessary
parties if, "in [their] absence, complete relief cannot be
accorded among those already parties" or "they claim[] an
interest relating to the subject of the action and [are] so

9

situated that the disposition of the action in [their] absence may . . . , as a practical matter, impair or impede [their] ability to protect the interest" or their absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

Addington's claims against the defendants in the state court action, which group of defendants includes the various Plaintiffs to this action and the individual administrators, are based on the same occurrence—the actions or inactions at the nursing home that resulted in injury to her. The arbitration agreement, by its terms, governs claims against the corporate parties as well as the administrators and its enforceability with respect to all parties, including Addington, is a matter pending before the state court. If this Court and the state court were to reach different conclusions concerning the enforceability of the arbitration agreement, Addington could be placed in a position where he was obliged to arbitrate the claims with some of the parties covered by the agreement and to proceed in litigation before the state court with respect to other parties, the individual administrators, who are arguably covered by the agreement. Thus, Addington is subject to a substantial risk of incurring inconsistent obligations because of the administrators' interest in this matter. Accordingly,

the Court concludes that the individual administrators are necessary parties to the action.

As the joinder of these administrators, citizens of Kentucky, would destroy diversity jurisdiction, the Court must determine whether they are "indispensable." Thus, the Court must balance the following factors: (1) the extent to which a judgment rendered in their absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in their absence would be adequate; and (4) whether Plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. P. 19(b).

Addington argues that he will not be afforded complete relief in the absence of the administrators as plaintiffs to this action. He asserts that there could then be a duplication of proceedings and that he will be unduly and unnecessarily prejudiced if he is subjected to arbitration with just the named Plaintiffs. The Court is not persuaded of his position. The duplication of proceedings alone in these circumstances is not a disqualifying factor. "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Addington's] decision to file a suit naming [Plaintiffs and the

11

individual administrators] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (6th Cir. 2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id*. The Court considers that, while there is a risk that the state court will reach an inconsistent outcome regarding the arbitration agreement as it relates to the administrators, it is a low risk. This does not rise to the degree of prejudice required to conclude an absent party is indispensable. *Id.* at 203. Furthermore, where the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice. *Id*. at 205.

Finally, Addington argues that an adequate remedy exists in state court if this Court dismisses the case. This is true, but the factors, when balanced, do not militate in favor of the conclusion that the administrators are an indispensable party. It follows that the failure to join them does not warrant dismissal. Ultimately, the requirements of diversity of jurisdiction have been met, and this Court has subject matter jurisdiction over this case.

**B.**

Next, the Court considers whether it should, as Defendant contends, abstain from exercising its jurisdiction in favor of the state court proceedings.  The undersigned and several other courts in this district have recently concluded that abstention is inappropriate in circumstances substantially similar to those presented in this matter.  *See Preferred Care, Inc. v. Belcher*, 5:14-cv-107-JMH, Memorandum Opinion and Order, DE 9 (E.D.Ky. March 31, 2015); *Richmond Health Facilities-Kenwood, LP v. Nichols*, Civil Action No. 5:14-141-DCR, 2014 WL 4063823 (E.D.Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill*, Civil Action No. 5:14-098-DCR; 2014 WL 3420783 (E.D.Ky. July 10, 2014); *GGNSC Vanceburg, LLC, v. Hanley*, Civil Action No. 0:13-106-HRW, 2014 WL 1333204 (E.D.Ky. Mar. 28, 2014); *GGNSC Vanceburg, LLC, v. Taulbee*, Civil Action No. 5:13-cv-71-KSF, 2013 WL 4041174 (E.D.Ky. Dec. 19, 2013).  In each instance, there was an allegation of harm resulting from care or the lack of care provided at a nursing home.  The party claiming injury filed a civil action in state court, and the nursing home then asserted that the state court claims were subject to the binding arbitration agreement between the parties and demanded the dispute be referred to arbitration and the state court case dismissed with prejudice. In each instance, the nursing home then filed a complaint in the federal court, alleging federal

jurisdiction by way of diversity (and omitting the nursing home administrators, arguably subject to the arbitration agreement but without diverse citizenship, as a party in the federal court action), arguing that the arbitration agreement was valid and enforceable, and asking the federal court to compel the party claiming injury to arbitrate his or her state claims and to enjoin him or her from further pursuing his or her claims in state court.

In *Taulbee*, the Hon. Karl S. Forester summed up abstention doctrine as follows:

> Even where federal courts properly have jurisdiction over the matter, a district court may abstain from exercising its jurisdiction and refrain from hearing a case in limited circumstances, *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir.2009). This exception is narrow because a district court presented with a case that arises under its original jurisdiction has a "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by the coordinate branches of government and duly invoked by litigants. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 813.

*GGNSC Vanceburg, LLC, v. Taulbee*, Civil Action No. 5:13-cv-71-KSF, 2013 WL 4041174, *2 (E.D.Ky. Dec. 19, 2013). Abstention is appropriate under certain limited circumstances, as follows:

14

> Under Colorado River, the threshold issue is whether there are parallel proceedings in state court. *Crawley v. Hamilton Cnty Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). Those factors are: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.*

*Id.*

The analysis is straightforward.  No one disputes that the present action is parallel to the state court proceedings; thus, the Court applies the eight factor test.  *See id.* at *3 (citing *PaineWebber*, 276 F.3d at 206).  As the Court sees the matter, only two factors favor abstention.  First, it is possible that the federal forum is less convenient to the parties, since Lexington is some distance from Stanford (in which the injuries allegedly occurred and near which the Court presumes that most of the witnesses reside).  *See id.* at *3.  Second, the state court action is no doubt adequate to protect the federal

15

plaintiffs' rights because, under the Supremacy Clause, a state court is bound by the requirements of the FAA. *Id.*

The others favor federal jurisdiction, keeping in mind that "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16, (1983). The parties agree that the case does not involve real property or the assumption of jurisdiction over any res or property. Thus, the first factor weighs in favor of the exercise of federal court jurisdiction and against abstention. *PaineWebber*, 276 F.3d at 207 (citing *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998)). The third factor offers little to no support for Defendant's argument in favor of abstention, since the desire to avoid piecemeal litigation is insufficient to overcome a strong federal policy in favor of arbitration or, in this instance, the exercise of jurisdiction. *Id*.

With respect to the order in which jurisdiction was obtained by each court, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. A call to the Lincoln Circuit Clerk reveals that little has happened since the time this matter was removed to this Court and the present motions were filed. An answer was filed, warning order attorneys were

16

appointed, and, mostly recently, the state court judge signed an order approving the reports of warning order attorneys appointed in that matter.  The instant action was filed a month after Addington filed in state court. As Judge Forester noted in *Taulbee*, "[t]he passage of [a month] is too insignificant to justify the use of abstention, especially when both cases remain in the early pleading stage." *Taulbee* at *4. Thus, the fourth factor weighs against abstention.  For much the same reason, the seventh factor—the relative progress of the state and federal proceedings—weights against abstention as there has been limited progress in the state court to date.

As to the fifth factor, regarding the source of law, while it is true that state law will govern the standard contract defenses Addington raises against the arbitration agreement, the Federal Arbitration Act governs the enforceability of arbitration agreements generally and applies here. The FAA presents a "liberal federal policy favoring arbitration agreements" that must be taken into account even when state-law issues are presented. *Moses H. Cone*, 460 U.S. at 24. It follows that this factor weighs in favor of federal court jurisdiction or, at the very least, not against it in this instance.  The final factor under *Colorado River* is the presence or absence of concurrent jurisdiction. While there is concurrent jurisdiction, this fact only marginally favors abstention, if at all. As noted

17

above, the governing law is the FAA, which "expresses a preference for federal litigation," The existence of concurrent jurisdiction "is insufficient to justify abstention" under the circumstances. *PaineWebber*, 276 F.3d at 208-09.

On balance, the circumstances in this matter do not present the "exceptional" circumstances necessary to compel this Court to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817-18.  Accordingly, this Court declines to abstain.

## C.

Finally, Defendant asks the Court to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to state a claim upon which relief may be granted because the underlying ADR Agreement is invalid and unenforceable as (1) it does not evidence a contract involving interstate commerce; (2) Plaintiffs lacked authority to bind the wrongful death beneficiaries; and (3) is unconscionable and void as against public policy.  The Court has carefully considered each of these arguments and concludes that they are without merit.

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *See*

18

*Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This requires a consideration of and a ruling upon the merits of a claim. In determining whether dismissal is warranted under Rule 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). If, in doing so, the Court determines that the case is legally insufficient, it will be dismissed.

Even assuming that Addington correctly contends that the care provided to the decedent occurred only within the borders of the Commonwealth of Kentucky, this is a case which clearly falls within the scope of the FAA. The FAA applies to "contract[s] evidencing a transaction involving commerce," 9 U.S.C. § 2, and extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice ... subject to federal control." *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56-57 (2003) (quoted in *Nichols*, 2014 WL 4063823 at *8; *Brookdale Sr. Living Inc. v. Stacy*, No. CIV.A. 5:13-290-KKC, 2014 WL 2807524, at *14 (E.D.Ky. June 20, 2014)). "The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress'

19

Commerce Clause power." *Id.* (citing *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273-74 (1995)).

Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control. *See Ping v. Beverly Enter., Inc.,* 376 S.W.3d 581, 589 (Ky. 2012) (citing *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991). Defendant argues, however, that *Ping* teaches that the Agreement cannot bind wrongful-death beneficiaries with respect to the requirement of arbitration. Plaintiffs argue that, to the extent that *Ping* holds that a wrongful-death claim is independent and thus one's agreement to arbitrate his or her personal injury claim does not bind wrongful death claimants to arbitration "because they were not parties to the agreement," the opinion is inconsistent with federal law and preempted by the FAA.  Because it is impossible to identify all possible wrongful death claimants at the time an arbitration agreement is signed and the resident is alive, the *Ping* holding would effectively nullify arbitration in the wrongful death context, which is precluded by the FAA. *See, e.g., Marmet Health Care Center, Inc. et al v. Clayton Brown et al.*, 132 S.Ct. 1201, 1203 (2012) (citing the FAA's "'emphatic federal policy in favor of arbitral dispute resolution' and concluding that the text of the FAA "includes no exception for personal-injury or wrongful-death claims") (quoting *KPMG LLP*

20

*v. Cocchi*, 565 U.S. ----, ----, 132 S.Ct. 23, 25 (2011) (per curiam)).

It is well established that, under the Supremacy Clause of the U.S. Constitution, a state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" is preempted. *AT&T Mobility, LLC v. Concepcion*, --- U.S. ----, 131 S. Ct. 1740, 1753 (2011) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). As federal substantive law, the FAA preempts all contrary state law. *See Id.* at 1748. The FAA was enacted in order to promote arbitration, and courts have frequently characterized the Act as embodying a "national policy favoring arbitration," *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 443 (2006), and "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (1983).

Under the FAA, courts are not permitted to "invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 518, 687 (1996). "Arbitration is a matter of contract" and courts must place "arbitration agreements on an equal footing with other contracts . . . enforcing them according to their terms." *Concepcion*, 131 S.Ct. at 1745 (citing *Buckeye Check Cashing*, 546 U.S. at 443. *Concepcion* teaches that it is

incorrect to apply "common law" defenses so that they apply only to arbitration or derive their meaning from an arbitration contract's existence. *Concepcion*, 131 S.Ct. at 1746. The *Concepcion* Court reiterated its ongoing frustration with state court bias against enforcement of arbitration agreements, holding: "[W]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA". *Id.* at 1743. The U.S. Supreme Court, as discussed above, has recognized that *Concepcion* applies to nursing home arbitration contracts like the one at issue in this case. *Marmet Health Care Center, Inc.*, 132 S.Ct. at 1203-04.

Further, Courts in the Eastern District of Kentucky, as well as others, have found that similar nursing home residency agreements are contracts "evidencing a transaction involving commerce" and enforceable under the FAA. *See Nichols*, 2014 WL 4063823 at *8; *Caudill,* 2014 WL 3420783, at *9; *see also Stacy,* 2014 U.S. Dist. LEXIS 84460, at *38-39;2014 WL 2829751 *Hanley,* 2014 U.S. Dist. LEXIS 42355, at *22-24;2014 WL 1333204 *GGNSC Vanceburg, LLC v. Taulbee,* No. 5:13-CV-71-KSF, 2013 U.S. Dist. LEXIS 110878, at *4,2013 WL 4041174 (E.D.Ky. Aug.7, 2013) (courts have looked to the acceptance of Medicare as evidence of interstate commerce); and *Warner,* 2013 U.S. Dist. LEXIS 178136, at *8.

22

The arbitration agreement in this case is a component of a larger contract that evidences a transaction involving interstate commerce. *See Stacy*, 2014 WL 2807524, at *14. As other courts have pointed out, "[t]he food, medicine, and durable medical supplies that [the plaintiffs] provided must come from somewhere." *Id.* at *14 (quoting *GGNSC Louisville Hillcreek, LLC v. Warner*, Civil Action No. 3:13-cv-752-H, 2013 WL 6796421, *8 (W.D.Ky. Dec. 19, 2013)). Accordingly, Addington's argument that the arbitration agreement is unenforceable under the FAA because it does not evidence a transaction involving interstate commerce is without merit.

Defendant argues next that the procedural and substantive nature of the ADR Agreement renders it unconscionable. Unconscionability, in the Commonwealth of Kentucky, is a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). It is "'directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.'" *Id*. (quoting *Louisville Bear Safety Serv., Inc.*

*v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. Ct. App. 1978)).

Defendant complains arbitration agreements in the health care context are *per se* conscionable, which is unsupported by the law. *See*, e.g., *Ping*, 376 S.W.3d at 588; *see also Insight v. Schnuerle*, 376 S.W.3d 561, 577 (Ky. 2012) (adopting the *Conseco* court's reasoning and noting the strong federal and state policy favoring the enforceability of arbitration agreements and the overarching goal of the FAA to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts and to place arbitration agreements upon the same footing as other contracts.")

Further, the form of this document does not, without something more, render it unconscionable. *Conseco Finance Servicing Corp.*, 47 S.W.3d at 342-43 (noting that the fact that an arbitration clause appeared single spaced on the back of a preprinted form does not render it procedurally unconscionable). The agreement in question is not a clause buried in the fine print of a long document. Rather, it is on separate sheets of paper, separately titled in bold print, and presented as a component of the admissions package during the admissions process. The Agreement is conspicuously titled. Although the Agreement is part of the admissions process, acceptance of the

24

Agreement is not required for admission to the facility, as plainly stated in the title of the document. The Agreement defines in bold print its implications using clear and unambiguous language. The Agreement does not limit the resident's right to recovery. Moreover, the obligations in the Agreement are reciprocal and mutual: the Parties have agreed to arbitrate any claims they may have against the other party.

In other words, there is nothing to suggest that the agreement is "one-sided, oppressive and unfairly surprising" or that the dichotomy between the parties, a health care company and an individual seeking nursing home care, accompanied by his family in seeking that care, resulted in some sort of bargain that should not be enforced. *Id*. at 341. For this reason, courts applying Kentucky law have found that arbitration agreements similar to the one at bar and presented as part of the nursing home admission process were not procedurally unconscionable. *See, e.g., Nichols*, 2014 WL 4063823 at *9; *see also Abell v. Bardstown Medical Investors, Ltd.*, Civil Action No. 3:11-cv-86-H, 2011 WL 2471210, *1-3 (W.D.Ky. June 20, 2011).

Moreover, the arbitration agreement is not, without something more, void against public policy as Defendant suggests. It is well established that there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, --- U.S. ----, 132 S.Ct. 23, 25 (2011); *see also*

*Marmet Health Care Center, Inc.,* 132 S.Ct. 1201 at 1203-04. Neither 42 C.F.R. § 483.10 (setting forth resident rights in long term care facilities) nor KRS 216.515 (Kentucky's residents' rights statute) for bid arbitration agreements neither would nor do they trump the FAA as Defendant suggests, and his motion will be denied for this reason, as well.

For all of the reasons stated above, Defendant Addington's Motion to Dismiss shall be denied.

**III.**

The Court next considers Defendant's Motion for an Extension of Time to Respond to Plaintiffs' Motion to Compel Arbitration and concludes that it is without merit. While the Court might be willing to grant a timely request on the barest of arguments at times, it does not believe that the late-filed request, filed with no excuse other than Defendant believed the Motion to Compel Arbitration to be "premature," warrants relief. In considering Defendant's arguments in support of his Motion to Dismiss, the Court has already considered and discounted many of the arguments which would likely be offered in response to the Motion to Compel Arbitration. Accordingly, the Court will consider Plaintiffs' arguments as set forth in their Motion to Compel Arbitration at this time.

**IV.**

Finally, the Court considers Plaintiffs' Motion to Compel Arbitration, in which they ask the court to require Defendant to arbitrate his dispute with them and to stay the state court action pending arbitration by the parties. As an initial matter, Plaintiffs have satisfied their burden in establishing that the parties agreed to arbitrate because a party seeking to enforce an arbitration agreement need only provide copies of a written and signed agreement to arbitrate. See *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004); *see also MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903 (Ky. 2013). Thus the burden shifts to Defendant to avoid enforcement of the agreement by proving that there was no valid agreement to arbitrate, and the Court has already considered and rejected its arguments in support of its Motion to Dismiss elsewhere in this Memorandum Opinion and Order.[2] *M & H Trucking, LLC*, 392 S.W.3d at 906.

---

[2] The Court notes, as well, Plaintiffs' argument that Defendant had the authority to enter into that agreement because the decedent had executed a clear and unambiguous Power of Attorney document that vested him with authority to "draw, make, and sign *any and all* checks, *contracts, or agreements*" and "institute or defend suits concerning my property or rights." [DE 1-3 at 1, PageID#: 52 (emphasis added).] The Court will honor that clear and unambiguous language and concludes, in the absence of evidence or argument to the contrary, that Addington had the authority to enter into the Arbitration Agreement. *See Ping*, 376 S.W.3d at 593 (citing *Wabner v. Black*, 7 S.W.3d 379, 382 (Ky. 1999); *Ingram v. Cates*, 74 S.W.3d 783 (Ky. Ct. App. 2002)) (determining that POA at issue in case did not confer

The parties have "agree[d] that any disputes covered by this Agreement . . . shall be resolved exclusively by an ADR process that shall include mediation and, where mediation does not successfully resolve the dispute, binding arbitration." [DE 1-2 at 1, Page ID#: 47.]  The "Covered Disputes," section of the ADR Agreement provides as follows:

> This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death and any alleged departure from the applicable federal, state, or local medical, health care, consumer or safety standards.

---

authority upon attorney-in-fact to enter into ADR agreement where POA specified that authority was limited to financial, real estate and health care decisions); *see also Kindred Healthcare, Inc. v. Cherolis*, 2013 WL 5583587 (Ky. App. 2013) (designated to be published) (motion for discretionary review pending) (holding that attorney-in-fact had power to execute ADR agreement where power of attorney included power to "make contracts," "draw, make, and sign . . . any and all checks, promissory notes, contracts or agreements" and to "generally . . . do and perform for [Fuqua] and in [her] name] all that [she] might do if present.")

[DE 1-2, at 3, Page ID#: 49.]

Defendant's State Court Action alleges negligence, medical negligence, "corporate negligence", violations of long term care resident's rights, and negligence against the administrator. All of these claims clearly fall within the broad scope of claims encompassed in the "Covered Disputes" section of the ADR Agreement outlined above. Further, as plainly stated in the provisions of the ADR Agreement specifically cited above, any disputes regarding interpretation of the agreement are, if mediation is not successful, to be referred to the arbitrator for a decision.

While the FAA requires a federal court to stay their own proceedings, it does not specifically authorize federal courts to stay pending state court cases. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). Rather, the federal court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act, 28 U.S.C. § 2283. The Sixth Circuit has concluded that a district court's injunction of state-court proceedings after compelling arbitration does not violate the Anti-Injunction Act because the injunction fell "within the exception for injunctions 'necessary ... to protect or effectuate [district court] judgments.'" *Great Earth*, 288 F.3d at 894. It concluded that "[a]n injunction of the state

29

proceedings [was] necessary to protect the final judgment of the district court on this issue." *Id*. Since enjoining the state proceeding is not barred by the Anti-Injunction Act and such injunction would serve to protect or effectuate this Court's judgments, Addington is enjoined from pursuing the pending state court action before the Lincoln Circuit Court.

Accordingly, **IT IS ORDERED**:

(1) That Defendant Addington's Motion to Dismiss [DE 6] is **DENIED**;

(2) That Defendant Addington's Motion for Extension of Time to File Response to Plaintiffs' Motion to Compel Arbitration [DE 9] is **DENIED**;

(3) That Plaintiffs' Motion to Compel Arbitration and to stay the state court action [DE 8] is **GRANTED**;

(4) That Defendant shall prosecute all of his claims arising out of his residency at Golden Living Center-Stanford in accordance with the terms of the ADR Agreement that he signed, submitting this matter to mediation and, where mediation does not successfully resolve the dispute, binding arbitration;

(5) That Addington is **ENJOINED** from pursuing the pending state court action against Plaintiffs before the Lincoln Circuit Court;

(6) That this matter is **STRICKEN FROM THE ACTIVE DOCKET**, and following the conclusion of any arbitration proceedings,

either party may petition the Court to reopen this matter to take appropriate action as necessary.

This the 3rd day of April, 2015.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge